BIAX Corporation v. NVIDIA Corporation The question that was left open here was, when you have a set of single processor devices, each with its own condition code registers, each of which meets the stipulated definition of computer, which is the language of Claim 1 of the patent, when do you no longer have a collection of single processor devices, each of which is separately accusable as violating Claim 1, and instead have a single multiple processor device? The district court never decides that scope issue until its summary judgment order. Even in the summary judgment order, however, it does so summarily. There's no explanation of how the court all of a sudden jumps from the device that was specifically accused by BIAX, which was each individual shader, to the idea that the chip was the accused device. And since the chip had multiple processors, you now didn't meet the claim limitation for, as we call it, shared by all. Yeah, but I think what he was doing there was saying that the expert testimony precluded that argument, that it was a concession. That under the claim construction that you lost, no? No, that is actually not what the district court says. If you read the quote, the testimony of the expert that was quoted, what it says was... No, no, I understand that, but I'm just telling you what I understand the district court to have ruled, and the question is whether that ruling is sustainable based on what the testimony actually was. Because I understand that his ruling was, the reason that this is objectively baseless, is that your own expert admitted that there was no infringement. That's correct, and the expert did not so admit. That's the point. The expert admitted that in a hypothetical, that hypothesized a multiple processor device, then shared by all was a requirement. But he said there was no requirement here because a shader was a single processor device that met all of the claim limitations of Claim 1 and the definition of computer. Let me ask this question. Put aside what you have just said and assume for purposes of this question that I'm not going to contest that, what the district court said. Tell me why the exceptional case finding could not rest on a determination that this claim construction that you asserted, your expert asserted, basically from the beginning about the single processor being satisfying even if there were other processors nearby even on the same piece of silicon. Why could the exceptional case finding not rest on the proposition that that is simply unreasonable when you read the patent as a whole? Well, it could. I think you would have to read into the district court's mind that in fact it found that particular argument to be objectively baseless. But the court gives you absolutely no reasoning as to how it made the leap. The underlying question is why is that view of the patent not clearly unreasonable? I think, Your Honor, you've hit in part on the way I would illustrate the argument. Let's assume you have two chips on a board and each chip is in fact a single processor device with multiple condition code registers. That is, claim one reads on each chip. It seems to me fairly obvious that you could accuse each chip under claim one. Unless the whole point in some sense of the patent was that when you have a device in which different processors are working together, they all have to share these condition code registers. I agree, Your Honor, if in fact you could find that to be the conclusion. But you don't have anything from the district court that tells you. So one would assume, given that gap, if the argument were objectively baseless or even objectively weak, the defendants would fill that gap in for you. In other words, they would show, hey, look at this language in the patent. It clearly makes Biax's argument on this point ridiculous. Let me walk through the arguments that they make. No, no, I agree that they don't do that filling in. I think I'm pretty clear about that. But where is the invention if... I'm sorry, which invention, Your Honor? Where is the advance over prior art found in the patent if you're talking about the side-by-side individual processors that are in fact working together but not sharing? Your Honor, the 628 patent really covered two innovations. And the first was embodied essentially in claim one. It's sometimes called parallel processing. It's the ability of a single processor to simultaneously access multiple condition code registers. In fact, the defendants argued that was prior art and the district court, in fact, they did so specifically referring back to the Gilliland patent when they made their motion for clarification of the Markman orders. The district court rejected their clarification motion, basically holding that the single processor that claim one properly read on a single processor device. You can't square that with an idea that claim one is somehow barred by prior art. There's no finding in the record on that point. And the multiple processor devices actually cover a different concept which is called simultaneous multithreading, which is the ability of multiple processors to share all of the condition code registers in whatever the accused computer is under the language of the patent. There are two different advances. Can I shift for a moment to a different argument? Originally you were arguing that it wasn't proper to read this language from claim two into claim one about the sharing of all the... The argument was made, that's correct. Are you making that argument now as a basis for reversing his determination of objective unreasonableness? Well, I simply phrase the argument differently. I think the result that the court essentially reaches by determining that the only possible... That claim one is required to read on an entire chip essentially has the effect of importing into claim one the sharing language of claim two. Claim one actually has no sharing language. So are you saying that this sharing requirement is not part of claim one? I'm saying that the sharing language is essentially... It's not part of claim one because if claim one reads on a single processor device there is no sharing. There's nothing to share. All condition code, by definition virtually, all condition code registers under that patent have to be accessible by that single processor in the device. That's what the district court recognized. But that is fundamentally different than the defendants who wanted essentially to have claim one have a sharing requirement. They argued at the markman stage that the definition of condition code register should import a sharing requirement into that definition. And the court rejected that. The court said, no, I'm not going to put it in there. The language of the claims takes care of it. That actually introduced a certain amount of confusion into this case. Because claim one doesn't have any word like sharing. It doesn't have any sharing concept. And the district court says it certainly has no applicability in a single processor device. So you come back down to the same question. Was it unreasonable for BIAX to argue that in fact these were, these sharers were all individually accusable devices? And nobody tells you why that's unreasonable. I think the court has already said it. The defendants don't appear to fill in the gap at all. And certainly the district court doesn't. And I think this court can conclude on its own. It's an eminently reasonable argument that BIAX made. It may be losing, but it's not exceptionally weak by any stretch of the imagination. Well, to conclude that, wouldn't we still have to send this back to make a determination under the new octane standard? Your Honor, if my choice is between affirmance and remand, I of course would choose remand. But I think this court, on this record, given the fact that both parties have not requested remand on this to go back under the new octane standard, I think this court is capable of essentially determining that, in fact, BIAX's arguments are not exceptionally weak. What argument is going to be made to you, to the district court, that hasn't been made to you here? The defendants have all the opportunity in the entire record to point to something that slammed the door on BIAX's argument, and they failed, which tells you that BIAX's argument was not exceptionally weak and can't even meet the lower threshold in octane. We'll save the remainder of your time for rebuttal. Mr. Davies, you are going to split your time with Mr. Rokach, is it? Yes, Your Honor. And I want to save two minutes for Mr. Rokach for rebuttal. Yes. So this is your exact time. That's my complete allotment of time. Thank you, Your Honor. So the district court here, Judge Bremer, has heard 40 patent cases. OK. And this is the one. Forget about the 40 patent cases. What about the two issues that they raise here, which they say rendered their argument for infringement as not being objectively based? One, that the judge improperly read language from Claim 2 into Claim 1. And second, that the expert testimony that the district court relied on doesn't say what the district court said it said. Yeah, happy to talk about those topics. To understand the key ruling here, which is the clarification ruling of Appendix 1204, and that ruling is not claim-specific. It does not talk about any particular claim. So if there's any ambiguity at the claim construction, and I don't think there was, the clarification ruling is definitely not claim-specific. And it's issued in a certain context, and the context is the patent, which is a multiprocessor patent, and the context is their complaint, their complaint, which accuses systems. It accuses the overall device. It does not accuse isolated single processors. I'm sorry, can I just stop you there? I mean, isn't that incredibly common? You would accuse the iPhone because it contained some infringing component. You would still write your complaint to say this is using the accused device. So the fact that they accused the game system or whatever it is, doesn't seem to me to imply anything about whether the analysis is done properly at the level of an individual shader or at some greater level where there are multiple shaders. I think it's a starting point. I agree, it's probably not dispositive, but it's certainly relevant. But he didn't rely on that. He didn't say your complaint was limited to this. He said two things. One, a reasonable challenge to my claim construction where I read the language from claim two into claim one, and two, your expert gave away the infringement argument. Let's talk about the second one first. I've read that testimony several times. I don't see that it can bear the construction that the district court gave to it. It doesn't say that there is no infringement if you consider the individual shaders. No, it doesn't say that. So? Well, obviously we have a wide range of discretion, and our point really is that the clarification order, anything from there, they needed to stop after the clarification order because the clarification order is not claim specific and it's done in a context in which people are talking about the entire device. And to continue the conversation, to understand the context, the judge had a Markman hearing, an all-day Markman hearing. He knew the parties disputed 17 terms. There were detailed audio-visual tutorials. Nothing about the single-processor, isolated-processor theory comes up. And why doesn't it come up? It's because they only raise it before the court after that proceeding. And to the extent... It doesn't make it unreasonable. It's not that it makes... It makes the reading of the clarification order unreasonable, because the clarification order... I don't see that the clarification order addresses this individual shader argument, does it? It wasn't before the court. Right. No, but it does address the relevant question, which is what arguments can they run and not run. And it says, you know, little risk that they're going to run an attempt to argue at trial that process elements are not able to act as any condition... But why... If he didn't address the individual shader argument at claim construction and it wasn't asked to, what's the matter with their raising the argument later? Now, of course, you can always refine your theories, Your Honor, but the question is whether it's a reasonable construction of the clarification order. And the district court said, no, it's not, because after the Markman hearing... No, I don't read what he said as being what you say. I read him as saying two separate things. One, that the claim construction order precluded your argument that the language from claim 2 shouldn't be read into claim 1. But I don't see him saying that the claim construction order precluded the individual shader argument. If you can show me where he said that, I'd be happy to look at it, but that's not the way I read what he said. But why would he say that if nobody was making that argument? He didn't say that. They were not pushing because they didn't make that argument. No, I'm talking here in connection with the attorney's fees issue. Where does he say that the individual shader argument was precluded by my claim construction? I don't see that. Right, he doesn't specifically say that. So his ruling about the individual shader argument rests, does it not, on his reading of the expert testimony. I don't think it does. No, the order is very clear and cites repeatedly to the clarification order and the claim construction order. He is obviously, the date, he triggers the date off when the expert testimony, I guess that was the feather that broke the... I can understand why you're running away from the expert testimony issue because you've admitted that the expert didn't say that individual shaders couldn't infringe the patent. It's not an admission, that's what he said. The district court read that and knew what he said. Yeah, but he didn't say that individual shaders couldn't infringe. He said that if you consider the entire chip, it doesn't infringe, right? Yes, but just to tie a different tack, obviously deference is a really important doctrine as the Supreme Court just made clear. His view was that his own clarification order, at a minimum, was disregarded by the parties here. He's not a judge who issues fees regularly. He's done it once out of 40 times. First of all, the fact that the district court has made a ruling doesn't mean that continuing to challenge that ruling is objectively unreasonable, right? Of course not. He seemed to think that as soon as he issued his order, parties should stop, that's not right. No, but they can't run over it. And when he says there's little risk that plaintiffs are going to run a particular argument, and then they run that argument, they took the dare. He felt that he had said, I don't believe they're going to do it, and then they turned around and that's exactly what they did. But he wasn't addressing the individual shader argument, which you yourself say wasn't raised until later. Why was the individual shader argument unreasonable? The individual shader, well, you can certainly, in light of the patent alone, it's unreasonable. I mean, if you look at Figure 6, it's clearly a multiprocessor device. The field of invention is all about multiprocessor devices. And so it's unreasonable, in light, just to go straight to the patent. Did you make that argument to the district court? It's not teed up that way, because the court had already ruled that. And this court summarily affirmed. In connection with the attorney's fees, you didn't argue to him that the individual shader argument was untenable in light of the specification, did you? To this court, we definitely emphasize Figure 6. I don't have the sites in front of me about whether we put it that way. We probably did, we probably did, but I don't have that. Can I ask you a question? I'm not sure I've got the timing of this right, but is it June 2010? Yeah, got the claim construction ordinance out, and then you yourselves realize there's some confusion about it, and you seek reconsideration, because he says various things in there that leave you uncertain about what its scope is. And then in August, he issues his motion for clarification. Is it September, or is it a whole year later that they put out specific allegations of infringement that refers specifically to the shader? It's later, it's later. Thank you, Your Honor, and I think that's what I was trying to answer. Yes, it's later. So Appendix 1370, that's in March 2010. Those are their amended contentions. That's after the Markman hearing, after the claim construction ruling. And yet their implication here is that they've made the single processor all along, theory all along, and they have not. It only came out a year later, after the claim construction ruling, and that's why... But they amended the infringement contentions, right? Yes, with a new theory after the claim construction ruling. Okay, so but why does that make the theory objectively unreasonable? It doesn't, what it does is it provides the milieu or the context for the order. I mean, we all speak language, and when things are said, particularly in a complicated like this, not every background principle is articulated, Your Honor. And here, the parties, because of the complaint, because of the original infringement contentions, nobody was thinking about this, and because of the patent, which is a multiprocessor patent, the conversation at the Markman, it was all about the multiprocessor patent, and he says what he says in the clarification order. The point I'm making, Your Honor, is that the single processor comes up later. It's not that they can't have another theory. It's that it doesn't help them explain why they couldn't understand what the clarification order says. Go ahead. No, no, no. It's also, I think, telling to understand the argument here that the arguments we've been discussing, but they actually had four excuses for ignoring this clarification order. It's the claim-specific point. Their lead argument below was not the one we've been discussing, Your Honor. Their lead argument below was that the claim construction was limited to particular claims, and that's just not tenable when you look at the clarification order, which is not claim-specific. They have the computer theory that's new to this case. You can read the merits argument all you want. In the first case, there was no mention of the computer theory. That is new, and they have the protective order to it. That is new. And why are they shifting? They're just shifting because they're trying to find a theory that sticks. I'm sorry, the computer theory, when you say it's new, I mean, I took it that that was actually the argument in the first appeal. On the second argument, pages 40 to 44 of their brief, they didn't use the language computer, but so what? It's perfectly clear that they were saying the same thing. But the substantive point is there for sure, and that's what we've said. You can look at each individual processor, and if the individual processor has access to the separate... But as this court knows, words matter, and to the extent they were trying to get any mileage out of rephrasing it under different terms, I don't think that's committed. The substantive point, for sure, and that's what we've been discussing. Was this page 1370 infringement contention, which I think the... I thought the table of contents says September 30th, 2011. No, it's early March. It's early March? Okay. Unfortunately... A, I think it goes A, 2100. One reason I guess I'm just trying to... Was that the first time that this contention was made? No, and if you go to appendix 1256, I'm sorry. I'm sorry, I think this is instructive. If you go to 1256, this is the attachment to the summary judgment for it, so this is the October 2010 amended infringement. The March one is on 1370, so these are the two key documents. Before the claim construction ruling, it's A, 1370, and the computer is the RSX processor, and... I'm sorry. I lost you. I mean, where are you getting these dates from? I'm looking at the table of contents, and they're quite different dates. Maybe I'm just reading the table. 1256 is in a range that identifies as August 3rd, 2011. I guess that's the summary judgment motion. But how do we know... You're saying that this infringement contention was sometime in March? If you go to... The 1256 is the second one, the amended infringement contentions, and that one is October 21st, 2010, and we know that from Appendix 12147. Did they make a motion to amend the infringement contentions? The infringement contentions were between the parties. It wasn't... I don't think they were filed. It's not like the Northern District of California. No, I'm sorry. But nobody objected to the amendment to the infringement contentions, right? Nobody... Nobody direct no, but that's not how it came... It wasn't litigated that particular way. We certainly objected to the late introduction of a new theory, for sure. How did you object? By moving for summary judgment, Your Honor. On the ground that it was raised? No, on the ground that our device has not infringed our patents, and then they came back... You addressed it on the merits, then. No, but there are... You addressed the new infringement contentions on the merits. You didn't argue it was made too late. The first time we see this theory, this isolated process of theory, is in their opposition to some of the motions, and that's at Appendix 1285 and 1286, and then we come back and say that's not what the court held. Right, but you didn't argue that the issue was introduced too late in the process. I don't have the district court briefs here, but I don't think it's a waiver of... It doesn't make a waiver of waiver. You didn't make a waiver of it. We didn't put it in waiver terms, no, but what we said, and it's what the district court agreed with, is that that is not consistent with the court's claim construction, and I think that would preserve any possible complaint we may have. Thank you, Mr. Davies. We'll hear from Mr. Rokach. He has six minutes and wants to save two for rebuttal. Just to be clear, Your Honor, my argument concerns the cross-appeal, so I would be willing to go after the rebuttal or right now, whatever the court prefers. Then we'll hold it then. We'll hold it. We'll hear from Mr. Onsager. Onsager. Your Honor, Your Honor, just so the court doesn't lose sight of it, the expert's report is in the record, and you can see the argument that, in fact, the expert used that is adumbrated in significant detail. It's actually somewhat readable. What's the date of that? I'm sorry? What's the date of the expert report? I believe the expert report is dated June 2011. June 2011. Yes. And is A-1256 infringement content? No, Your Honor, the report actually is fairly long. It starts, I believe, at A-1521. I'm sorry. I'm shifting topics now. Not topics. Yes, the infringement allegations are in two different places, 1253 through 1277, and then also at 1370. Am I right that I think Mr. Davies said that's October 21, 2010? I'm afraid I don't have the information to contest that. I'm trying to get straight on this, in part because if it's October 21, that's a week before the clarification order, so I'm trying to understand, were those infringement contentions known to the district court at the time of the clarification? It might matter what the district court thought the issue was in front of it at the time it issued the clarification.  I'm sorry, I can't answer the question because I actually don't know the answer, and I apologize for that. I will point out, Your Honor, though it would be highly unusual at the Markman stage for the court to address a specific infringement allegation in light of the product or the chip or anything like that. Obviously, that wouldn't be proper since Markman claims construction is done in the abstract, just looking at the patent itself.  I would assume the defendants would bring to the court's attention. As I said, they tried to bring in the prior art question. Was there discussion, either oral or on paper, as part of the first claim construction opinion or as part of the clarification, motions, oral arguments, whatever, of the distinction between a full system and an individual shader? There was not. Your Honor, at best, the argument was over the question of whether Claim 1 would read on a single processor device. And the issue was raised by the defendants on the basis that the court should construe the definition of condition code register to include a sharing requirement in that definition. And what the district court said was, no, I'm not going to do that because Claim 1 clearly would read on a single processor device, in which case you only have one processor and there's no sharing. So I'm not going to put that in the definition. The language of the claims took care of it is what the district court said. Do you have one more final thought, Mr. Ronsider? Your Honor, I'll only point out that certainly nobody, the district court, never ever rested any portion of its opinion on the idea that it was improper to refine the theory of infringement here to accuse the individual shaders as opposed to the entire chip. Your Honor, I think this court is left with a definite and firm conviction that a mistake was made and that the district court exercised discretion here based on an error of law or a clearly erroneous fact finding, namely its misreading of the expert witness report and therefore should be reversed on the field. Thank you. Thank you, Mr. Ronsider. Mr. Rokach on the cross-appeal. Thank you, Your Honor. If this may please the court, David Rokach representing Sony, I'll address the 1927 cross-appeal issue. If I may take a moment before diving into the substance of 1927, since to a large degree this turns on the same issues that the court has been addressing. Do you agree that if the 285 award goes away, there cannot be here a 1927 award? If it goes away. It goes away permanently. I don't mean that. Based on a finding that IAC's conduct was reasonable, yes. If it goes away based on a finding under the protective order, I think if anything that would emphasize the fact that Dorsey is the one who truly had culpability. But let me just take a moment to address the question that the court asked previously about where the district court had addressed this single processor issue. And I'll refer to pages A7 and A8 of the record. This is in the fee award. The district court on A8 refers back to the summary judgment order, where the court noted that the attempted isolation of a single processor element does not change the fact that any particular processor element in the accused chip is incapable of accessing all condition code registers, and so on. So this is where the district court took on. It sounds as though you're re-arguing the main appeal, whereas I would have thought the cross-appeal would be limiting to the question of whether the attorney should be treated differently. Yes. I'm going to move to that in a moment, Your Honor. I simply wanted to respond to the court's previous question with that citation. So turning to the cross-appeal, as my colleague mentioned, the district court made factual findings that once the expert had testified, at that point IAC's continued pursuit of its infringement theories essentially ignored the district court's order. And the district court further found that this prolonged the litigation in bad faith. These findings, to the extent upheld by this court, necessarily applied to IAC's counsel at Dorsey and Whitney. Dorsey is the one who participated in claims instruction. They represented the expert when he made the admission in question. And Dorsey filed and signed the summary judgment opposition brief, which is the subject of the district court's fee order. Now, it's true that BIAC's had supervisory responsibility for Dorsey, and that's why the Section 285 award is appropriate. But the fact remains that Dorsey is the one who actually did the misconduct found by the district court. Under Tenth Circuit precedent, the specific factual findings of the district court in this case easily satisfy the threshold for sanctions under Section 1927. Well, that may be true, but the question is whether the district court was compelled to award sanctions under 1927 once he found that the arguments were unreasonable. That's correct, Your Honor. And I think that turns on, to a large degree, the reasoning stated by the district court. If we look at the reasons given by the district court for declining to award Section 1927 fees, we don't see any factual findings that somehow justify the conduct previously found by the district court. There's no fact that Dorsey was somehow misled, that there's something that BIAC's knew that Dorsey didn't. The reason given by the district court is that zealous advocacy was not exceeded in this case. And our view is that there's simply no such thing that zealous advocacy somehow expands the boundaries of what counsel is permitted to do. Would that mean, in your view, that an objectively unreasonable argument, sufficiently so as to justify a 285 award, would always compel a 1927 award? I mean, the attorneys knew, had the same knowledge, or in this case, even more knowledge. So under Tenth Circuit law, Your Honor, I would agree that that would generally be the case. Now, given the recent standard for 285, I think it's fair, in my understanding, it's lower. So under the current standard, Section 285, there may be some things that are unreasonable enough for 285, but not for 1927. But I think if we look at these specific factual findings in this case, made under the previous standard, the answer would be yes. And the answer is yes, meaning that if there is evidence that there must be a fee award under 1927. Yes. Absent some finding of fact that somehow exculpates what counsel did. What would be such a finding? If you would have a situation where counsel was somehow unaware or somehow misled by the client, I'm not suggesting that that would be appropriate in any given case. And certainly that wasn't found in this case. But in general, I believe the answer to the question is yes. That if we have specific factual findings, that a litigation position was unreasonable, that problem rests more with counsel than it does with the client. That's our view. And in particular, the reasoning of the district court that the concept of zealous advocacy somehow acts as a shield, that's something that this court has directly rejected in Torres, IP, and IANET, and it's also something which the Tenth Circuit has rejected. For example, the Dryland case cited in both parties' briefs, there was specific reference to the zealous advocacy argument and the Tenth Circuit upheld a fee award against counsel under Section 1927 based on unreasonable litigation positions. Thank you, Mr. Rotash. We'll give you two minutes for rebuttal. Thank you, Your Honor. Excuse me. Mr. Lancaster, speaking for Dorsey and Whitney. Thank you, Your Honor, and I am, of course, submitting my argument to the 1927 issue. I will not belabor the point that has been the subject of discussion so far, that obviously to the extent that what Biax and his lawyers did below was reasonable and therefore not an appropriate basis for a 285 award applies a fortiori to a 1927 award. So how would you describe in an operationally useful way the distinction between objective unreasonableness of the sort found here, just assuming that, and whatever zealous advocacy or any other aspect of 1927 nevertheless would allow the counsel to do without getting personally subject to a fee award? The starting point, of course, Your Honor, is the language of the statute, and the language of the statute moves well beyond a phrase like objective reasonableness. Whoso multiplies the proceedings in any case unreasonably, that part is in common, and vexatiously. So that would be a really bad argument. As a practical matter, I think that's right, Your Honor. But even more than that, when you look at the few Tenth Circuit cases that have upheld 1927 sanctions, they are nothing like this. Obviously the Tenth Circuit is not going to be dealing with a claim construction issue that is revisited later on, but it would constantly deal with interlocutory decisions by a judge that maybe are challenged, that are questioned, that are revisited later in the case. That's a very common situation. That is nothing like any 1927 case that the Tenth Circuit has permitted. And what are those cases? The words that come repeatedly in those cases are, in effect, lawyers who lied to the court. In one case, a lawyer who repeatedly filed baseless cases. They are extreme cases. And you're right, Your Honor, to put a precise definition on it is not that easy. But this court held, even before the changes reflected in Octane, Fitness, and Highmark, that there was a hierarchy from 285 to Rule 11 to 1927 in terms of the level of conduct that was necessary in order to justify a fee award. And so what does that mean in practical terms in this case? Obviously, I think if the court were to hold that 285 fees were not justified, then the discretion that the judge exercised in applying Tenth Circuit law as to 1927 should also be affirmed. But let's assume, hypothetically, that this court were to decide, based upon the arguments of Vioxx, that there wasn't a basis for a 285 award. That had been shown. But that, as Your Honor raised, maybe that's a question that is returned to the district court. Our view is that it needn't be returned to the district court, but let's assume for the moment that issue is. Even in that event, the 1927 issue does not have to be returned to the district court. For the reasons I've just articulated, a higher standard, and because in that case, the court was dealing with Tenth Circuit law that it's obviously familiar with that do apply a higher standard and that issue need not be revisited by the district court. The only other point that I am inclined to touch upon, and it was just barely touched upon in the other argument, is this protective order issue. And the notion that perhaps the lawyers were in a better position than the client to assess what's reasonable or not reasonable. And the policy point I would make with respect to that is if, God forbid, there were a debate between client and lawyer, ultimately, about who was at fault for a fee award, obviously the lawyers would point to communications between lawyer and client. Perhaps the client would do so as well. But for a third party to in effect force the waiver of privilege that that kind of examination of communication would require is inappropriate fallout from being able to rely on a protective order to add to the pool of parties that might be responsible for a fee award. And so the narrow point that I want to make is that is a policy result that flows from the defendant's argument that is not a good one. I see that my time is up and subject to further questions. I have nothing else. Thank you, Mr. Lancaster. Mr. Wilcatch has up to two minutes if he wishes to utilize it. I would just like to very briefly respond, Your Honor, to this argument that was raised that Section 1927 somehow implies a higher threshold that really bad arguments are required. So first, we disagree with that altogether. We think the law is clear that Section 1927 does not impose such a standard. There's the Hamilton case we cite in our brief which states, for example, that pure heart, empty head is sufficient for 1927 fees. There's the Dryland case where 1927 was based on unreasonable litigation positions. But moving beyond that, I think it's important to note that as a factual matter, there is not one fact identified in Dorsey's brief to somehow suggest that this misconduct here somehow falls beneath even the higher standard. We have the factual findings of the district court ignoring the court order, prolonging litigation in bad faith. There were no findings by the district court that somehow justify Dorsey. And there was not a single argument made in Dorsey's own brief that somehow those findings of the district court are either incorrect or apply less to Dorsey than they do to Biax. For that reason, we ask that the 1927 ruling be reversed. And I just want to note, to the extent that there is a remand to the district court, we would ask that there be guidance given regarding the proper standard for 1927, in particular with regard to this zealous advocacy issue that we believe the district court was mistaken about. Thank you. Thank you, Mr. Wilcox. The case has been taken under revising. All rise. The Honorable Court is adjourned until tomorrow morning at 10 o'clock a.m.